UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>MANDY NATCHI YAGI and PETER WONG,<br><br>　　　　Defendants.<br>_____/ | No. CR-12-0483 EMC<br><br>**ORDER RE EVIDENTIARY OBJECTIONS** |

Pursuant to this Court's Final Pretrial Order, the government filed on October 18, 2013 its "Additional Notice Regarding Conspiracy Evidence." At the further pretrial conference held on October 22, 2013, the Defendants raised a number of objections regarding a number of exhibits contained on this list. The Court instructed the Defendants to file motions explaining their objections. The Defendants have done so. (Dkt. Nos. 175, 180). The Court rules as follows on these objections as follows:

A.　　Exhibit 280

Defendant Wong objects to Exhibit 280, an inventory receipt for the estate of Ian Malcom. (Dkt. No. 175). First, Defendant Wong argues that they did not receive proper notice of this exhibit because the only reference to evidence pertaining to the Estate of Ian Malcolm was in the October 18, 2013 notice. (*Id.* at 2). Second, the Defendant argues it has been prejudiced by this late notice because it may be inaccurate and the "most accurate lists are those are [sic] contained on the databases of the Public Administrator. . . . Had defendant been timely notified of the prosecution's intent to use this inventory list, it would have been able to obtain the other, more accurate lists and

1  to subpoena witnesses to testify to the accuracy of those records." (*Id.* at 3). Finally, the Defendant
2  argues the exhibit is hearsay.

3  Defendant's objection is **OVERRULED**. First, the exhibit is not hearsay as it is an adoptive
4  admission of Mr. Wong insofar as it bears his signature. *See* Fed. R. Evid. 801(d)(2)(B); *see also*
5  *McQueeney v. Wilmington Trust Co.*, 779 F.2d 916 (3d Cir. 1985) ("McQueeney's signature on each
6  of the cards is an unequivocal adoption of the contents therein.").

7  The Court also rejects Defendant's notice-based argument. The government has
8  demonstrated that on July 5, 2012, it provided defense counsel with discovery which included the
9  San Mateo County Sheriff's Report 11-5907, Supplement 5 which listed, as evidence seized from
10 Defendant Wong's home, "[m]iscellaneous documents that included letters from Carol C. Richbourg
11 to Peter Wong regarding consigned jewelry for the Ian Malcolm estate and also for Peter Wong."
12 (Dkt. No. 192-1, 192-2). The July 5, 2012 letter expressly stated that the government was giving
13 notice that it "may seek to introduce the other crimes, wrongs or acts committed by defendant which
14 are referenced in the enclosed documents." (Dkt. No. 192, at 1). Further, on July 10, 2012, the
15 government provided defense counsel with approximately 350 pages of additional discovery which
16 included documents relating to the consignment of an Omega Seamaster Watch to Carol Richbourg.
17 (Dkt. No. 192-3, 192-4).

18 The Court also finds that the evidence does not run afoul of this Court's final pretrial order
19 where the Court limited the government to evidence of uncharged acts not "expressly referenced in
20 the government's letter of July 15, 2013." (Dkt. No. 166, at 19). The July 15, 2013 letter in
21 question expressly referred to "Evidence of the defendants' sale of jewelry, including to Carole
22 Richbourg and at a location in Millbrae." (Dkt. No. 108-1, at 2). Defendant's attempt at the pretrial
23 conference hearing to draw a critical distinction between the "sale" of jewelry and the
24 "consignment" of jewelry is unpersuasive. This formalistic interpretation of the government's July
25 15, 2013 letter as if it were a patent claim requiring construction is unwarranted. The Court simply
26 intended that the government would only be permitted to introduce evidence of other uncharged
27 overt acts of the alleged conspiracy to the extent the defense had fair notice of them. In light of the
28 government's discovery and July 15, 2013 letter, the Court finds that the Defendants had fair notice

1  that the government could possibly utilize Exhibit 280 (or other evidence regarding the Ian Malcolm
2  estate) at trial.[1]

3  Finally, Defendant Wong asserts that "[t]he first indication that defendants had that the
4  prosecution intended to offer exhibit 280 was the prosecution notice regarding amended exhibit list
5  and amended exhibit binders." (Dkt. No. 175, at 2). While this may be true as to Exhibit 280
6  specifically, the original exhibit list (filed on September 24, 2013), provided the defendants with
7  further notice that the government intended to offer evidence regarding the Malcolm estate (and the
8  Omega Seamaster watch, specifically). The initial exhibit list included, among other Malcolm
9  estate-related exhibits, Exhibit 196, listed as "Inventory records from Malcolm Estate." (Dkt. No.
10 115, at 46). This exhibit arguably could contain the "more accurate lists" Defendant Wong argues
11 may exist. (Dkt. No. 175, at 3). Similarly, the government's original exhibit list included Exhibit
12 194, labeled as "Documents from Carole Richbourg re: Wong's sale of Omega watch from Malcolm
13 Estate." (Dkt. No. 115, at 46.) Defendants could have requested to inspect these exhibits. At the
14 further pretrial conference, defense counsel admitted they had never sought to inspect these, or any
15 other, exhibits

16 B    Michelle Rippy's Proposed Testimony re: Bags of Gold

17 Defendant Yagi has objected to Michelle Rippy's proposed testimony that Defendant Yagi
18 told her she had sold "bags of gold" at a place in Millbrae. Defendant Yagi objects to this testimony
19 on the grounds of late notice, that it is outside the scope of the conspiracy as there is "no
20 determination as to what estate this is in relation to" or whether it occurred within the "time of the
21 conspiracy." (Dkt. No. 180, at 2). She further argues that it is simple speculation to assume the
22 "bags of gold" referenced belonged to an estate. (*Id.*) Finally, she argues the evidence is hearsay
23 and the reference to "bags of gold" would be unfairly prejudicial. The government counters that
24 they provided notice regarding the sale of jewelry "at a location in Millbrae" to cover this testimony

---

[1] Defendant Wong continues to argue that the government did not comply with Fed. R. Evid. 404(b)'s notice requirements. As this Court found in its pretrial order, evidence such as Exhibit 280 do not constitute "other act" evidence but is rather evidence of the alleged conspiracy. Accordingly, questions of Rule 404(b) notice are irrelevant. *See United States v. Townsend*, No. S1 06CR 34, 2007 WL 1288597 (S.D.N.Y. May 1, 2007)

United States District Court
For the Northern District of California

and that the testimony is relevant because it a jury "could reasonably infer that the jewelry the defendants sold was taken from one or more of the unknown estates." (Dkt. No. 192, at 5).

The government has provided a copy of the interview Ms. Rippy provided investigators. (Dkt. No. 192-6). Defendants were provided with a copy of this interview in July 2013. The interview provides the following indication of the substance of Ms. Rippy's testimony on this point:

> The second incident took place in December of 2009 when Michelle's gold bracelet broke. Mandy [Yagi] told Michelle that she could take it to a place in Millbrae and get a good price for it. Mandy told Michelle that she takes "bags of gold" to that place, explaining that they were pieces of jewelry from old boyfriends.

(*Id.* at 2).

The objection is **OVERRULED**.[2] First, the Court rejects Defendant's notice argument, as the government's July 15, 2013 letter expressly referenced the sale of jewelry "at a location in Millbrae" and defense counsel also received a copy of Ms. Rippy's interview in July 2013. Second, the alleged statement is not hearsay as it is an admission by a party opponent under Fed. R. Evid. 801(d)(1). Third, the Court rejects Defendant's argument that the sale of "bags of gold" occurred outside of the temporal scope of the alleged conspiracy insofar as Defendant Yagi allegedly stated, in December 2009, that she "takes" (present tense) "bags of gold" to the "place in Millbrae." Accordingly, an inference may be drawn that the alleged transactions occurred within the scope of the conspiracy. Fourth, Defendant's argument that there is no indication that the jewelry in question belonged to an estate is one which should be directed to the jury. Finally, the Court finds that "bags of gold" reference is not unfairly prejudicial. As to these latter two points, Defendant Yagi is free to cross examine Ms. Rippy about the statement in question—for example about how Defendant Yagi told her the "bags of gold" were, in fact, pieces of jewelry and jewelry not from an estate, but rather from "old boyfriends."

---

[2] Previously, Defendants objected to the testimony of Ms. Rippy (or any other San Mateo County coroner) to the extent she seeks to testify as to how Defendants appeared to choose which estates would be taken by the Public Administrator's Office. In the final pretrial order, this Court ordered the government to provide a proffer establishing the basis for Ms. Rippy's testimony on this point. (Dkt. No. 166, at 28-29). The government provided this proffer in its amended witness list. (Dkt. No. 176, at 4-5). Because the Court finds that the government has shown sufficient foundation and relevance for Ms. Rippy's testimony, the Court will **OVERRULE** Defendants' objections to her testimony.

C.    Evidence of Defendant Yagi's Sale of Gold and a Ring in September 2011

Defendant Yagi objects to the government introducing evidence that Defendant Yagi sold gold and a ring to Carole Richbourg in September 2011. She objects to this testimony on the ground that there is no "offer of proof as to what estate this is connected with or time frame for which the same was made if it falls within the scope of the conspiracy." (Dkt. No. 180, at 4).

The objection is **OVERRULED**. The Court finds the "time frame" argument frivolous. The government's notice on this point states that the sale happened in "September 2011"—well after the start date of the alleged conspiracy. (Dkt. No. 126, at 2). Further, Defendant Yagi's argument that there is no connection to an estate—and thus it may not have been stolen at all—is an argument for the jury. The government intends to call Ms. Richbourg as a witness and she will therefore be subject to cross examination. Defendant Yagi is also free to testify as to the nature of this transaction and the items that she sold.

D.    Exhibit 90 Through Exhibit 186C

Defendant Yagi seeks to exclude Exhibits 90 through 186C on the ground that "many of the estates listed in this uncharged conduct list are outside the scope of the conspiracy. (Dkt. No. 180, at 4). She then lists the following estates that she believes fall outside the scope of the conspiracy: Stanley Wong, G. Langley, Irene Voorheis, Linda and Paul Gilmore, Everett Owens, Manuel De Leon, Mitsuo Yanagisawa, Gosslin, and Wright. (*Id.*) She has, however, completely failed to explain the basis for this assertion.

However, this Court ruled in its final pretrial order that the government would be precluded from offering evidence of uncharged acts which occurred before August 2008—the earliest date the alleged conspiracy could have commenced. (Dkt. No. 166, at 15). In light of this ruling and Defendant Yagi's objection, the government is **ORDERED** to provide an offer of proof as to the challenged exhibits[3] showing the basis for the government's belief that the (1) exhibits were likely

---

[3] The government's order of proof shall specifically address the following exhibits: 90, 91, 93, 94, 95, 96, 97, 100, 105, 106A, 106B, 106C, 107, 108, 109, 110, 111, 112, 113, 114, 116, 117, 119, 120, 121, 121A, 123, 123B, 123C, 123D, 128, 128A, 128B, 130, 130A, 130B, 130C, 130D, 130E, 132, 139, 140, 141, 142, 143, 144, 144A, 145, 146, 147, 147A, 177, 177B, 178, 179, 180, 181, 183, 184, 185, 186, 186A, 186B, 186C. On their face, the remaining exhibits address a relevant estate or conduct within the relevant period.

1 misappropriated after August 2008 from an estate (or address an estate from which items were
2 misappropriated after that date); or (2) is directly connected to an estate referenced in the indictment.
3 The government shall provide this offer of proof by noon, Wednesday, October 30, 2013.

4     The Court will reserve its ruling on Defendant Yagi's objection until it reviews the
5 government's offer of proof.[4]

6 E.    <u>Exhibit 92</u>

7     Defendant Yagi objects to the introduction of Exhibit 92, an "empty manila envelope labeled
8 'Gerstein re: Cara' found on the floor in the entry way." The objection is **SUSTAINED**. The
9 government is correct that Defendants' possession of materials relating to the Gerstein estate, in
10 general, has probative value. However, the Court finds that the probative value of an empty
11 envelope found in Defendant Yagi's home—even one marked as it is—is substantially outweighed
12 by its needlessly cumulative nature.

13 F.    <u>Exhibit 99</u>

14     Defendant Yagi objects to Exhibit 99 to the extent it contains children's teeth. (Dkt. No.
15 180, at 5). Defendant Yagi argues that this "creates an impression that Ms. Yagi has a sick fetish of
16 some kind or allude that she wanted to steal the teeth for some purpose." (*Id.*)

17     The objection is **OVERRULED**. The government has disclaimed any intent to use the teeth
18 in such a way, and if it should, the Court will entertain a motion to strike. The Court finds that any
19 remote risk of unfair prejudice does not substantially outweigh the probative value of evidence that
20 Defendant Yagi had keepsakes of a county administered estate in her home.

21 G.    <u>Exhibit 102 & 245</u>

22     Defendant objects to Exhibit 102, a "Daily Journal newspaper, dated 5/16/2011, containing
23 letter to editor by Rodel Ramos, found in Yagi's vehicle." Similarly, Defendant objects to Exhibit
24 245, labeled as a "Draft of Ramos' letter to editor of Daily Journal, found on dining room table."
25 Defendant argues that this item is "clear on its face that [these] would have been a personal item[s]."

---

[4] While such evidence might be admissible under Fed. R. Evid. 404(b) even if not direct evidence of the charged conspiracy or tied to an estate referenced in the indictment, the Court in its final pretrial order excluded such Rule 404(b) evidence under Rule 403 as needlessly cumulative. (Dkt. No. 166, at 16).

1  (Dkt. No. 180, at 5).  The government responds that these letters were written by Defendant Wong's
2  domestic partner objecting to the "then-proposed transfer of the Public Administrator's Office from
3  the District Attorney's Office."  (Dkt. No. 192, at 6).  The government argues these items are
4  relevant because they show "the defendants working together to oppose the management transfer
5  that would and did result in increased supervision and accountability over their activities."  (*Id.* at 7).

6  The objection is **OVERRULED**.  That Defendant Yagi had both a draft of the letter written
7  by Mr. Ramos (Mr. Wong's domestic partner) and the final letter in her possession tends to show
8  that Defendant Yagi was involved in, or aware of, the writing of the letter, from which the
9  government can argue that Defendant Yagi opposed the changeover.

10 H.   Exhibit 107

11 Defendant Yagi objects to Exhibit 107, a "Mickey Mantle signed baseball with baseball card,
12 both on wooden stand, found on living room coffee table."  Defendant Yagi asserts she can "propose
13 an offer of proof as to where it came from . . . and she has papers to prove it."  (*Id.* at Dkt. No. 180,
14 at 5).  To the extent that Defendant Yagi is arguing that the signed baseball is irrelevant as it belongs
15 to her and was not stolen from an estate, her objection will be overruled as this argument is one
16 better suited for the jury.  However, the Court will reserve this ruling pending its review of the
17 government's offer of proof which the Court has ordered the government to file above.

18 Further, by 4:00pm, Tuesday, October 29, 2013, Defendant Yagi is ordered to file with the
19 Court the offer of proof relating to Defendant Yagi's alleged ownership of Exhibit 107.  The
20 government shall respond within one day, indicating whether, in light of the offer of proof, it still
21 intends to offer Exhibit 107 at trial.

23 IT IS SO ORDERED.

25 Dated:  October 28, 2013

_____
EDWARD M. CHEN
United States District Judge

7