**United States District Court**
For the Northern District of California

1
2
3
4
5                      UNITED STATES DISTRICT COURT
6                      NORTHERN DISTRICT OF CALIFORNIA
7
8   UNITED STATES OF AMERICA,                  No. CR-12-0483 EMC
9            Plaintiff,
                                               **ORDER SETTING RESTITUTION**
10       v.                                     **AWARD**
11  PETER WONG,
12           Defendant.
                                        /
13 _____
14
15                      I.    <u>INTRODUCTION</u>
16          On November 22, 2013, Defendant Peter Wong was convicted of three counts of theft from a
17  federally funded program.  Docket No. 234.  On April 11, 2014, judgment was entered and
18  Defendant was sentenced to a term of imprisonment of thirty-three months and ordered to pay
19  restitution to the County of San Mateo.  Docket No. 272.  The Court deferred determination of the
20  amount of the restitution award to permit the parties to meet and confer and submit briefing.  The
21  parties submitted their respective briefs on May 21, 2014.  Docket Nos. 288, 289.  The Court held a
22  hearing on May 28, 2014.  Docket No. 290.
23          The government asserts that the Court should order Defendant to reimburse the County of
24  San Mateo for $561,167.43 in attorneys' fees the County incurred in investigating the Defendant's
25  conduct.  Docket No. 289, at 2.  The County retained three law firms at various points in the
26  investigation and prosecution of Defendant.  First, the County retained Keker & Van Nest LLP
27  ("Keker") to liaison with the Federal Bureau of Investigation and Department of Justice and to assist
28  in determining the scope of Defendant's conduct.  Docket No. 289-1, at 10.  Second, the firm of Fox,

**United States District Court**
For the Northern District of California

1   Shjeflo, Hartley & Babu LLP ("Fox Shjeflo") was retained to investigate the estates for which

2   Defendant served as deputy public administrator to determine the losses to the estate and its heirs.

3   *Id.* at 12.  Finally, Hanson Bridgett was retained to review Defendant's former estates and ensure

4   that those estates were in compliance with federal and state law.  *Id.* at 14.

5       The Court has considered the parties' papers and argument.  For the following reasons, the

6   Court **ORDERS** that Defendant shall pay the County of San Mateo $104,774.74 in restitution.

7                               **II.   DISCUSSION**

8   A.     Legal Standard

9       The Mandatory Victims Restitution Act ("MVRA") provides:

10          Notwithstanding any other provision of law, when sentencing a
11          defendant convicted of an offense described in subsection (c), the
            court shall order, in addition to, or in the case of a misdemeanor, in
12          addition to or in lieu of, any other penalty authorized by law, that the
            defendant make restitution to the victim of the offense, or if the victim
13          is deceased, to the victim's estate.

14   18 U.S.C. § 3663A(a)(1).  Further, the MVRA provides that in all cases, a restitution award must

15   reimburse the victim for expenses "incurred during participation in the investigation or prosecution

16   of the offense or attendance at proceedings related to the offense."  *Id.* § 3663A(b)(4).  Accordingly,

17   for certain crimes – including crimes involving fraud or deceit – restitution is mandatory.  *See*

18   *United States v. Gordon*, 393 F.3d 1044, 1048 (9th Cir.2004).

19       However, the Ninth Circuit has recognized that restitution under the MVRA "'may be

20   awarded only for losses for which the defendant's conduct was an actual *and* proximate cause.' 'But

21   for' cause is insufficient."  *United States v. Swor*, 728 F.3d 971, 974 (9th Cir.2013); *cf. Paroline v.*

22   *United States*, 134 S.Ct. 1710, 1719 (2014) (holding, under a separate restitution statute, that

23   "[r]estitution is therefore proper ... only to the extent the defendant's offense proximately caused a

24   victim's losses").  Accordingly, the government must "'show not only that a particular loss would

25   not have occurred but for the conduct underlying the offense of conviction, but also that the causal

26   nexus between the conduct and the loss is not too attenuated (either factually or temporally).'"

27   *Swor*, 728 F.3d at 974 (quoting *United States v. Gamma Tech Indus., Inc.*, 265 F.3d 917, 928 (9th

28   Cir.2001)).  Stated another way, the Court will only award restitution for those losses that were

1   incurred as a "direct and foreseeable result" of the defendant's wrongful conduct.  *United States v.*

2   *Phillips*, 367 F.3d 846, 863 (9th Cir.2003).

3        In addition to being "direct and foreseeable," the incurred expenses must also be necessary to

4   be recoverable.  *United States v. Amato*, 540 F.3d 153, 160 (2d Cir. 2008) ("The statute requires that

5   the included expenses be 'necessary,' and that they be 'incurred during participation in the

6   investigation or prosecution of the offense or attendance at proceedings related to the offense.").

7        "The burden of demonstrating the amount of the loss sustained by a victim as a result of the

8   offense shall be on the attorney for the Government," and the loss amount must be established by a

9   preponderance of the evidence.  18 U.S.C. § 3664(e).  The Ninth Circuit has commanded that the

10   MVRA "requires some precision when calculating restitution.  Speculation and rough justice are not

11   permitted."  *United States v. Anderson*, 741 F.3d 938, 954 (9th Cir. 2013).  At the same time, "exact

12   precision is not required and district courts do have a degree of flexibility in accounting for a

13   victim's complete losses; thus, a 'reasonable estimate' will suffice."  *Id.*

14   B.    <u>The County Is Entitled to $104,774.74 for Costs and Fees Paid to Keker & Van Nest, LLP</u>

15        The parties do not dispute that a victim's attorneys' fees incurred in directly assisting the

16   government in the investigation or prosecution of the offense are recoverable under the MVRA.  In

17   *United States v. Gordon*, the Ninth Circuit affirmed a restitution award which included

18   reimbursement for Cisco's attorneys fees incurred in responding to grand jury subpoenas and

19   government requests.  *See Gordon*, 393 F.3d at 1057.  Nonetheless, Defendant argues that a

20   significant figure of the Keker attorneys' fees fall outside the MVRA's definition.  First, he

21   challenges the extent to which the County seeks reimbursement for the fees incurred in responding

22   to Defense subpoenas.  Docket No. 288, at 8.  Second, he argues that a number of Keker's activities

23   were unnecessary in that they could have been performed by the United States Attorney's office or

24   San Mateo County's counsel office.  *Id.* at 9.

25        As to the costs incurred in responding to Defendant's subpoenas, *Gordon* makes clear that

26   such costs are recoverable under the MVRA.  The MVRA provides that losses incurred in

27   "participating" in the "prosecution of the offense" are recoverable.  Whether the subpoena issues

28

1    from the government or a defendant, the result is the same from the perspective of the victim – both

2    require the victim to incur costs and participate in the prosecution.

3         The Court has carefully reviewed Keker's billing records.  A number of the requested fees

4    are clearly recoverable under the MVRA as interpreted by *Gordon*.  For example, a significant

5    amount of the fees were incurred in reviewing and producing documents in response to subpoenas.

6    Additional entries involve telephone or e-mail communications with the Assistant United States

7    Attorney on the case providing him with estate information.  According to the government's

8    spreadsheet summarizing the requested fees, Keker billed the County $11,307.52 for costs and fees

9    related to "Respond[ing] to Government Requests for Information."  These amounts are properly

10   included in the restitution award.

11        The bulk of Keker's billed activities, however, are described more generally as "Assist[ing]

12   in Government Investigation and Prosecution."  In general, a victim's losses incurred in

13   participating in the investigation or prosecution of the offense are recoverable.  *See* 18 U.S.C. §

14   3663A(b)(4).  However, there are a number of tasks in the Keker bills that were not demonstrably

15   necessary to participate in the investigation or prosecution.  By way of example:

16        • On April 20, 2012, a Keker attorney billed 30 minutes
             (equivalent to $325.00) for "Research re [AUSA] Caputo;
17           review voicemail from Caputo."  While reviewing
             communications from an AUSA is not objectionable, the Court
18           cannot conceive of a reason why research regarding the AUSA
             assigned to the case would be reasonably necessary.
19

20        • On April 19, 2012, 45 minutes (approximately $350.00) were
             billed on an internal Keker conference regarding "case
21           background and strategy."

22        • On June 22, 2012, 2 hours ($1,300.00) were billed for
             "Attention to arrests."

23   Further, the Court finds that the certain amounts billed by Keker in reviewing the pleadings,

24   indictments, and orders from this Court were not reasonably necessary for purposes of the MVRA.

25   *See United States v. Nosal*, No. CR-08-0237 EMC, 2014 WL 2109948, at *7 (N.D. Cal. May 20,

26   2014) (excluding from restitution award entries "related to attorney review of filings, orders, and

27   press coverage").  For example, in October 2013, approximately 5 hours were billed (representing

28   roughly $3,000.000) for reviewing various pleadings and orders.

4

1    In addition, there appear to be some inefficiencies and duplications in Keker's billing

2    statements.  For example, On February 22, 2013, Michael Celio billed .250 hour for "Confer with

3    Ybarra re action items."  That same day, Michelle Ybarra billed .5 hour, in part, for "confer with

4    Nibbelin and Celio regarding additional production."  Similarly, on April 19, 2012, Mr. Celio billed

5    3.375 hours for, among other things, a conference with Stuart Gasner.  That same day, Mr. Gasner

6    billed 2.875 hour for, among other things, "conference with Nibbelin, Celio re overview."  The

7    Court finds that a reduction of the requested Keker fees is necessary to account for these various

8    staffing inefficiencies.  *See Nosal*, 2014 WL 2109948, at *7.

9         The County is seeking to include in the restitution award $130,968.43 paid to Keker.  In

10   order to account for staffing inefficiencies as well as the presence of various entries which are not

11   recoverable under the MVRA as noted above, the Court will reduce the Keker fees by 20%.

12   Accordingly, the Court will include $104, 774.74 in the restitution award.

13   C.   <u>The Government Has Failed to Meet Its Burden Regarding Inclusion of the Fox Shjeflo Fees</u>

14        The government asserts that the County is entitled to $393,171.08 in restitution representing

15   the fees paid to the Fox Shjeflo law firm.  According to Mr. John Nibbelin, the Deputy County

16   Counsel for the County of San Mateo, the County retained Fox Shjeflo to "review and investigate

17   the Affected Estates and determine the extent to which Mr. Wong's criminal conduct had resulted in

18   losses to the estate, its heirs, or the County and where possible to perform the legal work necessary

19   to administer properly those estates."  Declaration of John D. Nibbelin ("NIbbelin Decl.") ¶ 15.  He

20   further asserts that the firm "reviewed the Affected Estates for inaccuracies and improprieties

21   potentially resulting from Mr. Wong's administration of those estates."  *Id.*  ¶ 16.  It "corresponded

22   with heirs and beneficiaries of the Affected Estates about their administration and review, and

23   ensured that the Affected Estates were administered properly."  *Id.*  Because Defendant covered his

24   tracks over an extended period of time, Mr. Nibbelin asserts that the County had no choice "but to

25   analyze each and every estate to determine the full amount of Mr. Wong's theft."  *Id.*

26        Defendant argues that these fees should be excluded from the MVRA for the reasons stated

27   by the District of Columbia Circuit in *United States v. Papagno*, 639 F.3d 1093 (D.C. Cir. 2011).  In

28   that case, the court stated that a victim's internal investigation costs, "at least [those] that [have] not

United States District Court

For the Northern District of California

been required or requested by criminal investigators or prosecutors," were not recoverable under 18 U.S.C. § 3663A. *Id.* at 1099. However, the *Papagno* court recognized that its holding was in conflict with the holdings of a number of other circuits. *Id.* at 1101. For example, in *United States v. Amato*, 540 F.3d 153 (2d Cir. 2008), the Second Circuit reviewed a restitution award in a large corporate fraud case which included substantial amounts incurred by the victim corporation in internal investigation costs. The Court affirmed the restitution award, noting that "[d]efendants perpetrated a complicated fraud against a large corporation and a number of its clients. . . . That this fraud would force the corporation to expend large sums of money *on its own internal investigation* as well as its participation in the government's investigation and prosecution of defendants' offenses is not surprising." *Id.* at 162 (emphasis added).

The Ninth Circuit has repeatedly stated that it has "'adopted a *broad* view of the restitution authorization [for investigation costs].'" *Gordon*, 393 F.3d at 1056-57 (quoting *Phillips*, 367 F.3d at 863) (alteration in original). In light of this, the Court declines to find *Papagno* controlling, and instead finds those Circuits that have held internal investigations costs are properly included in a restitution award persuasive.

Here, Defendant was employed in a position of trust by the County. In his role as a Deputy Public Administrator, Defendant was charged with carrying out the County's fiduciary duty to the estates it administered and the estates' heirs. It is reasonably foreseeable that Defendant's theft from estates he administered would result in an internal investigation by the County to determine the scope and breadth of Defendant's conduct. Such an investigation would also be necessary. As the Second Circuit recently noted in discussing its cases holding that internal investigation costs were properly included in a restitution award:

> In both cases, the internal investigations paid for by the victims unmasked fraud and led to investigations conducted by the authorities. The expense of the internal investigations was necessary because the entity had interests to protect (the integrity of its ongoing operations and reputation, at the least) as well as a duty to protect those interests when faced with evidence, indicia or a grounded suspicion of internal misconduct, and the investigation was a means calculated to achieve the protection of those interests.

6

**United States District Court**
For the Northern District of California

*United States v. Maynard*, 743 F.3d 374, 381 (2d Cir. 2014).  This rationale applies with even more force in this case.  Not only does the County have an interest in ensuring the integrity of its public functions, but, as just discussed, it has a fiduciary duty to third parties.  In these circumstances, the Court finds that *reasonable* internal investigation costs would be both necessary as well as foreseeable to an individual in Defendant's position.  Accordingly, as a matter of law, the County's reasonable internal investigation costs would be properly included in the restitution award.

However, the government has failed to provide a record which would allow the Court to determine whether, and to what extent, the precise fees charged by Fox Shjeflo were necessary or reasonable.  The County's description of the actions taken by Fox Shjeflo as part of the internal investigation is devoid of any meaningful detail.  Specifically, the Nibbelin declaration makes the following statements regarding Fox Shjeflo's investigation: (1) "From April 2012 through July 2013, Fox Shjeflo reviewed the Affected Estates for inaccuracies and improprieties potentially resulting from Mr. Wong's administration"; (2) "Fox Shjeflo corresponded with heirs and beneficiaries of the Affected Estates about their administration and review, and ensured that the Affected Estates were administered properly"; and (3) Given Defendant's conduct and his covering of his tracks, the County had "no choice but to analyze each and every estate to determine the full amount of Mr. Wong's theft."  Nibbelin Decl. ¶ 16.  These cursory statements do not provide any guidance into what "review[ing] the Affected Estates for inaccuracies and improprieties" entailed.  Was it as simple as reviewing the paperwork looking for red flags?  Did it require extensive accounting reviews?  The government and the County have provided the Court no guidance.  Without some description of Fox Shjeflo's actions taken as part of the internal investigation, the Court cannot determine whether those actions were "reasonably necessary" in the context of this case.

This lack of specificity is critical in this case because a review of the Fox Shjeflo bills suggest that many of the actions taken by the firm are more properly characterized as "estate administration" rather than investigation.  By way of example:

> • On May 8, 2013, $910.00 was billed for "Attend hearing on Report of Sale and Petition to Confirm Sale of Real Property in Gerst Estate; Conferences and discussion with overbidder;

Drafting to revised Order and Bid; File same and obtain Certified copies of Order; Draft letter to PA enclosing Certified Order Confirming Sale of Real Property and endorsed filed Bid Form."

- On May 9, 2013, $60.00 was billed for "Draft Letters of Administration"

- On May 13, 2013 $30.00 was billed for "Travel to SMSC to file Receipt of Distribution in Carthen."

- On April 1, 2013, $180.00 was billed for "Draft Notice of Administrator's Sale of Real Property at Private Sale in the Dinkjian Estate; Correspondence with PA regarding same."

- On April 3, 2013, $90.00 was billed for "Conferences and correspondence regarding Chan Estate, Hartford deferred compensation plan and efforts to collect same."

- On December 4, 2012, $80.00 was billed for "Telephone conference with Controller's Office regarding changing the address on file in Leon Ketner Estate" and $52.50 was billed for "Travel to SMSC to file Proof of Service in Ragsdale and Notice of Sale and I&A in Fried."

The problem with such entries is that they do not appear to be "investigation" costs within the meaning of *Gordon* and *Amato*, but rather costs of estate administration which are not sufficiently direct and proximate to Wong's wrongful conduct so as to be chargeable to him under the MVRA. In other words, it appears that Fox Shjeflo billed the County for various administrative tasks that were the County's duties. It appears that such tasks would have been done (either by a law firm, county counsel, or a public administrator) independent of Defendants' conduct. To use an example above, whether or not Defendant stole from estates he administered, someone would have had to "[t]ravel to SMSC to file Receipt of Distribution in Carthen" or contact the "Controller's Office regarding changing the address on file in Leon Ketner Estate." *See Swor*, 728 F.3d at 974 (restitution may only include losses "'for which the defendant's conduct was an actual *and* proximate cause.' 'But for' cause is insufficient."). Without more of an explanation – an explanation that the government was unable to provide either in its papers or at the restitution hearing – the Court cannot conclude that such administrative charges were "reasonably necessary" or a proximate (or even a "but for") cause of Defendant's theft.

United States District Court

For the Northern District of California

1    This is significant because the government candidly noted at the hearing that it would be

2    difficult to separate the "administrative" tasks from the "investigative" tasks.  Ultimately, the Court

3    must be able to determine the County's losses with "some precision" – "[s]peculation and rough

4    justice are not permitted." *Anderson*, 741 F.3d at 954.  The record the government has provided the

5    Court makes it impossible for the Court to provide even a "reasonable estimate" of what the

6    County's "reasonably necessary" losses are.  Accordingly, because the government has not met its

7    burden of establishing that the Fox Shjeflo fees were reasonably necessary, the Court will not

8    include them in the restitution award.

9    D.    The Government Has Failed to Meet Its Burden Regarding Inclusion of the

10         Hanson Bridgett LLP Fees

11   The government asserts that the County is entitled to $21,401.67 in restitution representing

12   the fees paid to the law firm of Hanson Bridgett LLP.  Mr. Nibbelin declares that Hanson Bridgett

13   was retained to "identify any improprieties, inaccuracies, and errors made in tax filings submitted by

14   the County on behalf of or in connection with the Affected Estates."  Nibbelin Decl. ¶ 17.

15   Specifically:

16         Because Mr. Wong's offenses could have resulted in erroneous or
           fraudulent submissions made by the County to the IRS or Franchise
17         Tax Board of the State of California, Hanson Bridgett's work
           necessarily included a systematic review of the estates administered by
18         Mr. Wong and follow-up efforts to bring those estates into compliance
           with federal and state tax laws.

19

20   *Id.*

21   The government and County's presentation of the Hanson Bridgett fees suffer from the same

22   defect as the Fox Shjeflo fees.  First, there is no description as to what the "systematic review of the

23   estates administered by Mr. Wong" entailed.  Second, the government has not proven that

24   conducting a "systematic review" of all of Mr. Wong's estates was "reasonably necessary" to the

25   participation in the investigation or prosecution.  To the extent that the County's investigation

26   (either conducted by itself or by Fox Shjeflo) revealed accounting improprieties or missing assets

27   from an estate, an investigation into the tax consequences of that estate could be deemed reasonably

28   necessary.  But the government has failed to demonstrate why it was reasonably necessary to do a

9

**United States District Court**
For the Northern District of California

1  systematic tax review of every estate without tying that review to Wong's wrongful conduct or some

2  indication that there was a problem with the estates investigated.

3        The potential causation problems with the Hanson Bridgett fees are evident from the record.

4  Defendant's Exhibit P (not introduced at trial) represents an "audit log" created when the Public

5  Administrator's Office was moved from the District Attorney's Office to the Office of Adult and

6  Aging Services, describing needed changes from prior practices.  This log included a "Taxes" entry

7  which listed as a "Practice" "44 packets returned from tax preparer – all past due with penalties and

8  interest."  Accordingly, it appears that the County had problems with the filing of tax returns

9  unrelated to Defendant's theft.  It is thus not apparent on this record that when Hanson Bridgett

10  billed the County, for instance, for "written advice . . . related to delinquent return filings, including

11  matrix of information and IRS notices," that this was proximately caused by Defendant's conduct.

12        Accordingly, because the government and the County have failed to demonstrate that the

13  $21,401.67 fees incurred by Hanson Bridgett were proximately caused by Wong's wrongful conduct

14  and "reasonably necessary" to participate in the investigation or prosecution, the Court declines to

15  include them in the restitution award.

16                  **III.**   **CONCLUSION**

17        For the foregoing reasons, Defendant will be ordered to pay the County of San Mateo

18  $104,774.74 in restitution.

19

20        IT IS SO ORDERED.

21

22  Dated: June 13, 2014

23                       _____

24                       EDWARD M. CHEN
                     United States District Judge

25

26

27

28